COLE et al. v. CANTON MINING CO. et al.

No. 3685.  Decided November 29, 1921.  (202 Pac. 830.)

1.  MINES AND MINERALS—PARCELS OF LAND HELD PROPERLY SOLD SEPARATELY ON FORECLOSURE AGAINST MINING PROPERTY.  On foreclosure of a mortgage on "those certain portions, claims and mining rights, titles or properties on those certain veins or lodes of rock * * * and described as follows, to wit, Snow

Storm, Snow Storm No. 1," etc., including some 35 claims and properties, the mortgagor had the right to demand that the parcels be sold separately, in view of Comp. Laws 1917, §§ 6934, 7230, 7235.

2. MORTGAGES—SALE CONSUMMATED BY BID. A sale on foreclosure of a mortgage is fully consummated when a purchaser bids on the land, and, where parcels of land covered by a mortgage were sold separately on mortgage foreclosure and were all purchased or bid in by mortgagee, such mortgagee's demand for resale en masse was not tantamount to a withdrawal of his bid, and the sheriff's subsequent action "under protest" of mortgagors in selling the land en masse in compliance with mortgagee's demand did not constitute a legal sale, though the land brought a greater price and was bid in by the mortgagee, in view of Comp. Laws 1917, §§ 6934, 7230, 7235.

3. MORTGAGES—LIENHOLDER'S RIGHT OF REDEMPTION VESTS IMMEDIATELY UPON VALID SALE TO MORTGAGEE. Right of redemption in favor of a subsequent lien vests immediately upon valid sale to mortgagee on foreclosure under Comp. Laws 1917, §§ 6934, 7230, 7235.

4. MORTGAGES—RIGHTS OF REDEMPTIONERS SAFEGUARDED. When a lawful sale on foreclosure has been once consummated at a price not grossly inadequate after full compliance with the statutes and orders of the court, the rights of redemptioners, when established, should be equally safeguarded, even though some other course might increase the sum for which the property is sold.

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by H. B. Cole and others against the Canton Mining Company and others. Judgment for defendants, and plaintiffs appeal.

AFFIRMED.

*H. C. Allen* and *H. A. Rich,* both of Salt Lake City, for appellants.

*Pierce, Critchlow & Marr,* of Salt Lake City, for respondents.

CORFMAN, C. J.

The plaintiff H. B. Cole commenced this action in the district court of Salt Lake county to foreclose a mortgage or trust deed given to him and the other parties plaintiff by the defendant Canton Mining Company to secure a bonded indebtedness created by said mining company with the plaintiffs for the purchase price of certain mining claims and properties situate in Little Cottonwood mining district, Salt Lake County.

Said cause was regularly prosecuted, and after a hearing before said court a judgment and decree of foreclosure was made and entered against the defendant Canton Mining Company in favor of plaintiffs. Judgment was also entered in favor of D. J. Williams, one of the defendants, who had filed a cross-complaint in the action. This last-mentioned judgment was declared to be subsequent and subject to the prior lien of the plaintiffs.

February 11, 1920, pursuant to said judgment and decree, an order of sale issued out of said court commanding and directing the sheriff of Salt Lake county to proceed "to sell the premises described in said judgment and decree" and "to do all things according to the terms and requirements of said judgment and decree and the provisions of the statutes in such cases made and provided."

In obedience to said order of sale, on March 8, 1920, the said mortgaged property was sold by the sheriff and a return made on March 30, 1920, in manner following:

"I did attend at the time and place fixed for said sale and exposed said premises for sale at public auction, each parcel separately, and sold the same to H. B. Cole, plaintiff herein, who made the highest bids for each parcel, as follows:" (Then follow the names of the several mining claims and the price paid or bid for each separate claim, including a tunnel site, machinery, etc.) "Said sums, aggregating a total sum of $3,928.00, being the highest bids made and the whole price paid for said property."

At said sale, and immediately after all the property had been sold by the sheriff in separate parcels to H. B. Cole for sums aggregating $3,928, said plaintiff, through his attorney,

demanded that said property be again offered for sale as a
whole.    The judgment debtor, Canton Mining Company,
through its officers, and also the defendant D. J. Williams,
as a judgment creditor, who were present at said sale and
had in the first instance demanded that the property be sold
in separate parcels, objected thereto.    The sheriff declared
he had "nothing to sell" under the circumstances, but, after
assurance had been given him by the attorney for plaintiff
Cole that a sale en masse would be legal, the sheriff "under
protest" offered the property for sale as a whole, and, after
some competitive bidding, declared the same sold to the plain-
tiff H. B. Cole, he again being the highest bidder, for the
sum of $6,950.

It appears that for the time being no return was made by
the sheriff of either sale, or until March 29, 1920, when a re-
turn was made showing a sale to have been made in separate
parcels to the plaintiff H. B. Cole, as heretofore pointed out.
It further appears that on the same day, March 29, 1920,
an attorney for plaintiff Cole receipted the sheriff for the
purchase price of said property, $3,928, as sold in separate
parcels, and received at the hands of the sheriff a certificate
of sale therefor.    Thenceforth the record of sale stood as
having been made in separate parcels for said sum of $3,928
until September 7, 1920, when the defendant D. J. Williams,
as a judgment creditor of the Canton Mining Company, in
due and legal form served upon the sheriff and filed in the
office of the county recorder of Salt Lake county notice of
redemption of certain mining claims and property so sold
by the sheriff in separate parcels and paid to the sheriff the
purchase price at such sale, together with interest and costs,
as by statute in such cases made and provided.    Thereupon
the plaintiff Cole, through his attorney, filed a protest in
writing against said redemption unless the redemptioner paid
an amount sufficient to redeem from the sale of the property
for the sum of $6,950, the price bid by plaintiff Cole for the
property when sold as a whole in the manner aforesaid.

On September 8, 1920, the sheriff filed an "amended re-
turn" of said sale, showing first a sale of said property in

separate parcels for the sum of $3,928 to the plaintiff H. B. Cole, and, secondly, ''that thereupon at the said time and place and at the request of plaintiff herein and upon his requiring of me that the said property be sold in bulk or lot, I offered for sale, under protest, all of said property, as above described, in bulk and received the bid of H. B. Cole therefor in the amount of six thousand nine hundred and fifty dollars ($6,950.00), which was the highest and best bid made for the said property so offered for sale in bulk and I sold all of said property described as follows [descriptions] to the plaintiff H. B. Cole for the sum of six thousand nine hundred and fifty dollars ($6,950.00), that being the highest bid made.''

Said ''amended return'' bore date September 3, 1920, although not filed until September 8, 1920, after the defendant D. J. Williams had sought to redeem the property as having been sold in separate parcels, as aforesaid.

On September 14, 1920, said redemptioner, D. J. Williams, tendered to the said sheriff, for execution and delivery to him, a deed conveying the property as first sold in separate parcels and so sought to be redeemed by him as a judgment creditor, as aforesaid. The execution and delivery of the deed was refused by the sheriff, whereupon the said Williams instituted mandamus proceedings in said district court to compel the sheriff to act.

While said mandamus proceedings were pending against the sheriff and said action was being heard before said court, the plaintiff herein, H. B. Cole (who had become a party to said mandamus proceedings by intervention), and the said sheriff, moved for a suspension of the trial thereof to enable them to make application in the present case for leave to file an amended return and certificate of sale under the execution or order of sale heretofore mentioned in said foreclosure proceedings. Thereupon the district court ordered that further proceedings before it in the mandamus trial be suspended, and that the said intervenor be given leave to forthwith make an application to the said court in the present case for leave to make and file said amendments. Accordingly, the plain-

tiffs moved the court "to permit and ,compel the sheriff of Salt Lake county to amend his return on said execution so as to show the sale of said property en masse, or as a single group or unit, to H. B. Cole for the sum of $6,950, and to amend and correct the certificate of sale heretofore issued by him in conformity with said amended return. That in the event this honorable court should find the sheriff of said county was not authorized or empowered by law to sell said property en masse or as a single unit after having offered the same in lots and parcels, then these plaintiffs respectfully move the honorable court to vacate and set aside the said pretended sale of said property in lots and parcels, on the ground that the said sheriff erred in his judgment and in the exercise of his discretion as to the divisibility of said property and therefore order and direct the said sheriff to re-advertise and offer said property as a single unit, or en masse."

An extended hearing was had upon the said motion, after which the court made its findings and entered its order denying said motion in toto. The plaintiff H. B. Cole appeals. He assigns some 49 errors as grounds for reversal of the judgment of the trial court in denying the relief applied for under his said motion.

With the exception as to the evidence bearing on the question of the divisibility of the property sold under execution, which is in conflict, the facts are substantially as heretofore stated. The record on appeal, therefore, presents the question: Which, if either, of the two sales made by the sheriff of the property in question, was the lawful one, and, if neither, then should the district court have ordered a resale of the property?

It is very strenuously contended by plaintiff's counsel in their brief, and there is much evidence in the record supporting their contention, that the several mining claims were being developed as one mine or as a group of claims, lying contiguous to each other, and their surface contour is such that to develop or operate them in separate parcels would be impracticable. On the other hand, there was evidence re-

ceived tending to show that the geological conditions were such as to make them desirable for mining as separate propositions or mines. Be that as it may, the trial court by its decision not only treated the first sale, in separate parcels, as the proper and lawful one, but, under the facts and circumstances, held that the first sale could not be set aside, notwithstanding the fact that the second sale, en masse, was to have brought a much larger sum. Under our jurisdiction, as elsewhere, the rules governing and controlling foreclosure proceedings, including sales and the right of redemption under them, are largely statutory. Section 7230, Comp. Laws Utah 1917, provides:

"* * * Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of the mortgaged property, or some part thereof, to satisfy said amount, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution."

Section 7235, Comp. Laws Utah 1917, provides:

"Sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in case of sales under execution. * * * In all cases of real estate under foreclosure, the court may direct the parcels and order in which parcels of property shall be sold."

Section 6934 provides:

"* * * When the sale is of real property, and consisting of several known lots or parcels, they must be sold separately. * * * The judgment debtor, if present at the sale, may also direct the order in which the property, real or personal, shall be sold, when such property consists of several known lots or parcels, or of articles which can be sold to advantage separately, and the officer must follow such directions."

It would seem that in this case the offering of the mortgaged property by the sheriff for sale in separate parcels substantially complied with the statutory requirements above quoted. Plaintiff does not contend otherwise, but he insists that our statutes are not mandatory but merely directory, and that in this case the general equitable powers of the court to direct its process and control its officers should in its discretion be exercised in such a way as to vacate and set aside the sale of the property made by the sheriff to the plaintiff

in separate parcels. There can be no doubt but that in a proper case the court has the discretionary powers contended for by the plaintiff. However, the court's discretion should not be exercised in a way that would be incompatible with the plain provisions of the statute, nor in such a way as would be an unjust interference with the vested rights of the parties interested in the foreclosure, and the sale made under it. In this instance we think the record is clear from the language of the mortgage itself that the property in question was described and mortgaged to the plaintiffs as separate parcels, not as a unit or one mine. The description in the mortgage reads:

"All the right, title and interest * * * in or to those certain portions, claims and mining rights, titles or properties on those certain veins or lodes of rock * * * and described as follows, to wit: Snow Storm, Snow Storm No. 1," etc. (In all some 35 claims and properties are thus mentioned and described.)

The property is thus referred to and separately described as claims or parcels of mineral land. The plaintiff's complaint in this action refers to and describes the property in like manner as does also the decree of foreclosure and all the other documentary records in the foreclosure proceedings leading up to the sale by the sheriff in separate parcels. It does not appear that any demand or a single suggestion was made by the plaintiffs, as advisory to the court, that a more advantageous sale could be made of the property as a whole until after the property had been offered and sold to the plaintiff Cole in separate parcels, in obedience to the court's order. In the absence of some showing before the court to move it to order otherwise, we think it was its plain duty to decree, and the sheriff as its officer to offer and sell, the property in separate parcels. Such was not only in conformity with the statute but was also in accord with the statutory rights of the mortgagor, which, being present by its officers, demanded a sale in separate parcels.

But it is argued that plaintiff Cole's demand for a resale en masse, made after he had purchased the property in separate parcels, was tantamount to a withdrawal of his bid, and that the sheriff's subsequent action "under protest" in com-

pliance with plaintiff's demand constituted a legal sale at a greater price. In making this contention counsel seems to lose sight of the fact that a legal sale had already been fully consummated. We are not unmindful that in some jurisdictions, under similar circumstances, no sale could have been consummated until after a confirmation by the court ordering the sale. Such is not the practice in our jurisdiction, but sale proceedings, and the rights of parties under them, are fixed, and in the absence of gross irregularities, mistake, fraud, or collusion practiced on the part of the participants, a sale, when made as directed by the court, in compliance with the statutes, must of necessity be held valid and binding and the rights of all interested parties fixed and determined thereby.

In the present case the defendant D. J. Williams was a judgment creditor of the Canton Mining Company. Although his lien on the property sold was subsequent to that of the plaintiff, he nevertheless had the right of a redemptioner under the first sale made of the property. His right of redemption vested immediately upon a valid sale taking place. Let it be kept in mind this is not a case where, pending a sale, the purchaser raised his own bid or for some good and valid reason withdrew the bid made by him, or the sheriff, by reason of some irregularity in the proceedings, ordered a resale, or for some good reason apparent declined to accept a bid; but this is a case where the sale was regularly and fairly conducted in full compliance with the statute and the court's order. An offer of the property was made, competitive bids received, and plaintiff's bids, the highest bids made for the several parcels, were accepted by the sheriff. Moreover, a certificate of sale was issued to the plaintiff in accordance with the first sale, and he receipted the sheriff in accordance therewith. True it is he claims that he took the certificate through mistake or inadvertence and that he frequently endeavored to have the sheriff rectify his mistake and also demanded a certificate in an amended form and in accordance with the so-called second sale. As has been seen, in those matters he succeeded only in part, that

of receiving at the hands of the sheriff an "amended certifi-
cate" reciting the facts as to what actually transpired at the
time of the sale of the property. That certificate was not re-
turned until after the defendant Williams had sought to re-
deem the property under the first sale, which, in our judg-
ment, he then had clearly the right to do.

Of course, in all cases of sales of property under foreclos-
ure or execution sales, the end to be acquired is to secure the
highest price possible for the property sold. But the price
cannot be the controlling and determining factor in all cases
and under all circumstances.

When a lawful sale has been once consummated at a price
not grossly inadequate, as we think it was in this instance,
after full compliance with the statutes and the orders of
the court, the rights of redemptioners when estab-
lished should be equally safeguarded, even though      4
some other course might increase the sum for which
the property is sold. *Ontario Land Co.* v. *Bedford,* 90 Cal.
181, 27 Pac. 39; *Marstson* v. *White,* 91 Cal. 37, 27 Pac. 588;
*Power* v. *Larabee,* 3 N. D. 502, 57 N. W. 789, 44 Am. St. Rep.
577.

As we have pointed out, the rights of the respective parties
here, under the facts disclosed by the record, must be de-
termined under the provisions of our statutes. In our judg-
ment the admitted facts are such as to preclude the relief
upon any ground sought for by plaintiff in his motion, and
the district court's denial of the same was proper and right.

It is therefore ordered that the judgment of the district
court be affirmed, with costs.

WEBER, GIDEON, THURMAN, and FRICK, JJ.,
concur.