Clay T. BEESLEY and LaJuana
Beesley, Plaintiffs,

v.

Dell Ransom HATCH, Dell F. Hatch,
Joan Hatch, Jodel Ventures Trust, En-
cinosa Enterprises, Bernice Lehman,
Corey S. Mogelberg, and Winferd
Spendlove, Defendants.

Winferd SPENDLOVE, Cross–Claim
Plaintiff and Appellee,

v.

JODEL VENTURES TRUST, Dell F.
Hatch, Trustee, Corey S. Mogelberg,
Bernice Lehman, Encinosa Enterprises,
and Dell Ransom Hatch, Cross–Claim
Defendants and Appellants.

No. 910298.

Supreme Court of Utah.

Nov. 19, 1993.

Ronald W. Thompson, Barbara G. Hjelle,
Michael A. Day, St. George, for appellee.

Stanford Nielson, Salt Lake City, for ap-
pellants.

HOWE, Associate Chief Justice:

The trustor under a trust deed which
was foreclosed as a mortgage and other
defendants who claim under the trustor
appeal from a trial court order denying the
trustor's motion to set aside the sheriff's
sale of real property pledged as security in
the trust deed.

In 1980, Dell F. Hatch, as trustee of the
Jodel Ventures Trust, purchased approxi-
mately twenty acres of real property in
Hurricane, Utah, for $74,000 from defen-
dant Winferd Spendlove. Hatch executed a
promissory note to Spendlove for that
amount and secured it by a trust deed on
the property which named Spendlove as the
beneficiary. The property was described in
the trust deed by metes and bounds as one
tract. Hatch and Spendlove subsequently
amended the note several times to facilitate
Hatch's sale of subparcels to third-party
buyers by providing for the release of two
acres from the lien of the trust deed for
each $12,000 payment on the principal.
The trust deed was not amended. Hatch

then sold subparcels to several third-party buyers, some of whom are defendants with Hatch in this action.

Plaintiffs Clay T. Beesley and LaJuana Beesley, who had purchased a parcel from Hatch, brought this action against Hatch, Spendlove, and the other defendants, claiming that Hatch and Spendlove failed to disclose unstable soil conditions. Spendlove cross-claimed against Hatch and the other defendants to foreclose the trust deed as a mortgage inasmuch as payments on the promissory note were then in default. This appeal presents only an issue arising out of the foreclosure.

Eventually, Spendlove, Hatch, and the other defendants stipulated to a judgment against Hatch for $117,730.44, an amount which included unpaid principal, interest, attorney fees, costs, and delinquent property taxes. The trial court entered a judgment for that amount and ordered that the real property described in the trust deed be sold at a sheriff's sale.

Hatch appeared at the sheriff's sale, representing himself and some of the third-party buyers. He demanded that the sheriff sell the property by parcels. Spendlove objected, and the sheriff sold the property in one block to Spendlove for $75,000. Hatch asserts that at least one third-party buyer was ready to submit a bid on the parcel he was purchasing, but he declined when the sheriff refused to sell the property in separate parcels. Following the sale, defendants moved to set aside the sheriff's sale, and Spendlove moved for a deficiency judgment. At the hearing on the two motions, the trial court concluded that the judgment and order of sale directed the sheriff to sell the property en masse rather than in separate parcels and that the sheriff complied with the court's order. The court also relied on the fact that prior to the sheriff's sale, defendants did not request the court to direct that the property be sold in parcels. Finally, the court concluded that defendants had failed to produce evidence that the sale was unfair or prejudiced their rights. Therefore, the court denied the motion to set aside the sheriff's sale and entered a deficiency judgment in favor of Spendlove.

Defendants' sole contention on appeal is that the twenty-acre tract described in the trust deed had been broken down by the parties into "known" parcels and that they were entitled to have the sheriff sell the parcels separately. They assert that a sale by separate parcels would have allowed any third-party buyer (1) to bid on the parcel he or she was purchasing without being required to bid on the entire twenty-acre tract, or (2) to redeem a single parcel instead of the whole tract. Defendants rely on section 78–37–1 of the Utah Code and rule 69(e)(3) of the Utah Rules of Civil Procedure.

Section 78–37–1 provides:

There can be one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed *and sell the same according to the provisions of law relating to sales on execution,* and a special execution or order of sale shall be issued for that purpose.

(Emphasis added.) The "provisions of law relating to sales on execution" are embodied in rule 69(e)(3), which states so far as is pertinent here:

When the sale is of real property, consisting of *several known lots or parcels, they must be sold separately....* The *judgment debtor,* if present at the sale, *may also direct* the order in which the property, real or personal, shall be sold, when such property consists of several known lots or parcels, or of articles which can be sold to advantage separately, and the officer must follow such directions.

(Emphasis added.)

On the other hand, Spendlove contends that the controlling statute is section 78–

37–6, which is contained in the chapter of our code on foreclosure of mortgages. That section provides in part, "[I]n all sales of real estate under foreclosure *the court may determine the parcels and the order* in which such parcels of property shall be sold." (Emphasis added.) Relying on this statute, Spendlove argues that the court issuing the order of sale determines whether the property shall be sold en masse or in parcels and, if it is to be sold in parcels, determines the boundaries of the parcels and the order in which the separate parcels shall be sold.

Defendants argue that although the property was described as one tract in the trust deed, the parties had recognized and created subparcels or lots by amendments to the trust deed note. They refer to the provision releasing two-acre parcels from the trust deed for each $12,000 paid on principal. Defendants also refer to a plat made by the Washington County Recorder which shows several lots created within the twenty acres. This plat was apparently made to facilitate the separate ad valorem taxation of lots purchased by third-party buyers under contract from Hatch. It was not, however, an official subdivision plat which had been prepared, accepted, and filed pursuant to sections 57–5–1 through –4 of the Utah Code.

■ We conclude that in order for lots or parcels to qualify as "known lots or parcels" within the meaning of rule 69(e)(3), which requires them to be sold separately, the lots or parcels must be readily identifiable to the sheriff conducting the sale. One example is when the lots or parcels are separately described in the order of sale given to the sheriff as in *Cole v. Canton Mining Co.*, 59 Utah 140, 202 P. 830 (1921). There, the property that was foreclosed on and sold consisted of thirty-five separate mining claims, each having a different name or number. We there held that the sheriff had properly sold the claims separately in obedience to the statute (now embodied in rule 69(e)(3)) and to the demand of the mortgagor made to the sheriff at the time of sale. *Id.* at 147, 202 P. at 832–33.

■ In the instant case, the decree of foreclosure and the order of sale given to the sheriff described the property by metes and bounds as one twenty-acre tract. Nothing was furnished the sheriff which would have assisted him in identifying any lots or parcels within the tract. It is true that Hatch and his third-party buyers, and perhaps even Spendlove, may have "known" the lots or parcels which had been created. Also, the county recorder's plat showed several separate lots and parcels which Hatch had apparently created. However, there is nothing in the record before us which reflects that the sheriff had any specific information by which he could have sold the property in separate lots or parcels. For instance, it does not appear that he had legal descriptions of the separate lots or parcels so that he could advise would-be bidders as to the dimensions and acreage of the lots or parcels. It does not even appear that the sheriff had before him the recorder's plat, to which he might have referred in conducting the sale. The sheriff is ill-equipped to formulate descriptions at the time of sale, and neither the statute nor rule 69(e)(3) requires him to do so.

Despite the lack of information available to the sheriff, defendants still might have had the property sold in lots or parcels had they exercised their right under section 78–37–6 to have the court "determine the parcels and order in which the parcels shall be sold." However, they made no attempt to do so. The stipulation of foreclosure and sale to which the parties agreed, the judgment of foreclosure, and the order of sale all described the property as one tract. The court could have "determine[d] the parcels" by separately describing them in the judgment of foreclosure and in the order of sale furnished the sheriff. These determinations would be made by the court in advance of the sale. The sale could then be advertised as a sale to be made in lots or parcels. The sheriff would have adequate information on which to proceed, and an orderly sale would result.

At the hearing on defendants' motion to set aside the sale, the court observed that

it had been its intention that the property be sold as one tract in view of the lack of any request by defendants to the contrary. In *Cole*, the sheriff sold thirty-five mining claims separately because they were separately described in the order of sale. The plaintiff then induced the sheriff to resell the claims en masse. This resulted in the realization of a greater sum than the separate sale had yielded. The plaintiff then moved the court to set aside the first sale, but the motion was denied, and the plaintiff appealed. We reviewed the controlling statutes, which were virtually identical predecessors to sections 78–37–1 and –6 and rule 69(e)(3). In affirming the denial of the motion to set aside the sale by separate parcels, we wrote:

> In this instance we think the record is clear from the language of the mortgage itself that the property in question was described and mortgaged to the plaintiffs as separate parcels, not as a unit or one mine.... The plaintiffs' complaint in this action refers to and describes the property in like manner as does also the decree of foreclosure and all the other documentary records in the foreclosure proceedings leading up to the sale by the sheriff in separate parcels. It does not appear that any demand or a single suggestion was made by the plaintiffs, as advisory to the court, that a more advantageous sale could be made of the property as a whole until after the property had been offered and sold to the plaintiff Cole in separate parcels, in obedience to the court's order. In the absence of some showing before the court to move it to order otherwise, we think it was its plain duty to decree, and the sheriff as its officer offer and sell, the property in separate parcels.

*Cole*, 59 Utah at 147, 202 P. at 832–33. While *Cole* presented the opposite fact situation from the instant case, it is significant that this court stressed in *Cole* the importance of interested parties moving the court before the sale to order the sale of the property in a particularly advantageous manner, whether that be en masse or in lots or parcels.

■ There is a general policy to sustain a sheriff's sale. "[T]he policy of the courts is to uphold judicial sales except when they are manifestly unfair ... especially this is true in a state such as Utah which has a substantial period of redemption." *Mower v. Bohmke*, 9 Utah 2d 52, 55, 337 P.2d 429, 431 (1959). Defendants have not presented evidence that the sale was manifestly unfair. We have declared that absent "gross irregularities, mistake, fraud, or collusion practiced on the part of the participants, a sale, when made as directed by the court, in compliance with the statutes, must of necessity be held valid and binding and the rights of all interested parties fixed and determined thereby." *Cole*, 59 Utah at 148, 202 P. at 833. No irregularities appear in the present sale. No request was made to the trial court to "determine the parcels and the order in which such parcels of property shall be sold" pursuant to section 78–37–6, which would have broken down the twenty-acre tract to facilitate sale by parcels. In that absence, the trial court issued its order of sale describing the property as one tract, intending that it be sold en masse. The record does not reflect that the sheriff had adequate information by which he could have sold the property in "known" lots or parcels. Consequently, he properly sold the property en masse.

The order denying defendants' motion to set aside the sheriff's sale is affirmed.

HALL, C.J., STEWART, DURHAM and ZIMMERMAN, JJ., concur.