MANUFACTURERS HANOVER TRUST COMPANY

V.

VLASTIMIL KOUBEK, ET AL.

Record No. 891549

September 21, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and
Lacy, JJ., and Cochran, Retired Justice

*Benjamin C. Acklerly (Deborah L. Fletcher; Hunton & Williams*, on briefs), for appellant.

*Allen S. Rugg (Melrod, Redman & Gartlen*, on brief), for appellee Vlastimil Koubek.

*Daniel A. Gecker (John S. Barr; Kevin R. Huennekens; Cynthia B. Tripp; Maloney, Yeatts & Barr*, on brief), for appellees Jefferson Equities Corporation and Maloney, Yeatts & Barr.

No brief or argument for appellees Jefferson Hotel Associates Limited Partnership and Andrew J. Winston.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we decide whether an execution sale of certain items possessed by a judgment debtor was conducted in accordance with Virginia law.

In June of 1988, Vlastimil Koubek obtained a default judgment against the owner of the Jefferson Sheraton Hotel in Richmond, Jefferson Hotel Associates Limited Partnership (the hotel owner), in the amount of $113,923.02 plus interest for architectural services rendered in the renovation of the hotel. To enforce the judg-

ment, Koubek delivered a writ of fieri facias to the Richmond City sheriff directing him to levy against certain furnishings in the hotel, including a marble statue of Thomas Jefferson, a Henri Bernard painting, two Yamaha grand pianos, and various room furnishings (collectively, the furnishings). At the time of the levy, the furnishings were also encumbered by a security interest, junior to Koubek's lien, held by Manufacturers Hanover Trust Company (Manufacturers Hanover) and by a possessory interest held by the lessee of the hotel, Jefferson Equities Corporation (the hotel tenant).

The hotel tenant filed a motion to quash Koubek's levy on the ground that the levy interfered with its possessory rights under its lease. Although aware of this proceeding, Manufacturers Hanover did not participate. The trial court denied the motion to quash and authorized the sale of the furnishings, subject to the hotel tenant's possessory interests under the hotel lease. The trial court recognized that publicity surrounding a public sale could have an adverse impact on the hotel tenant's business and stated in its May 19, 1989 opinion and order that the circumstances did

> warrant some special accommodation with respect to the manner and contents of any advertisements, the time and conduct of prospective purchasers' inspections, and the manner of the actual sale itself. Accordingly, counsel for the parties are requested to confer with each other in an attempt to work out the details of the items just mentioned, and to arrange a hearing with the court during the week of June 12 to present a plan for the advertisement, inspection, and sale contemplated herein or, in the absence of agreement between the parties, to present their respective positions with regard to those matters.

Koubek and the hotel tenant did reach an agreement on the method by which they would conduct the execution sale: the hotel tenant agreed to bid $115,000 for the furnishings and, if a third party appeared at the sale, the hotel tenant would purchase Koubek's judgment for $115,000. There is no indication that this agreement was presented to the court for review at a hearing during the week of June 12 as had been directed in the opinion.[1]

---

[1] A conference call regarding the notice of the sale was instituted at the request of the sheriff's office. The court, the sheriff's office, and counsel for the hotel tenant and Koubek

The sheriff posted notice of the sale at two courthouses in Richmond. The sale was held in a private room at the hotel at 10:00 a.m. on June 29, 1989. The only parties present at the sale were: the representative of the sheriff's office who conducted the sale; George T. Ross, a general partner of RWS Associates, the entity which had assumed the hotel owner's indebtedness to Manufacturers Hanover; Gecker, counsel for the hotel tenant, RWS Associates, and Ross; and Allen S. Rugg, counsel for Koubek. Pursuant to the agreement, Gecker purchased the furnishings as a lot for $115,000 on behalf of an entity he called Jefferson Properties Corporation.[2]

Manufacturers Hanover learned of the sale on July 5, 1989, and filed this suit to prohibit consummation of the sale or to invalidate it on the grounds of inadequate notice and inadequate price. The trial court held an expedited hearing on July 11, 1989, and granted Manufacturers Hanover's request for a temporary injunction.

On September 6, 1989, the court held an evidentiary hearing at which time Manufacturers Hanover requested issuance of a permanent injunction or decree invalidating the sale, arguing, *inter alia*, that "if the sale is had in such a way that a Sheriff's sale becomes a private sale, then the sale is subject to attack as an improper sale." It urged that "what we had here was a private sale where the parties intentionally, without representing fully what they were doing to this Court, conducted a private sale with intent to exclude known parties in interest from attending the sale . . . ."

The trial court, however, denied the injunction, ruling from the bench that Code § 8.01-492 did not require notice to be given to Manufacturers Hanover, that the posting of notice undertaken by the sheriff complied with the notice provisions of that statute, and, therefore, the sale could not be set aside. We awarded Manufacturers Hanover an appeal.

On appeal, Manufacturers Hanover again argues that the execution sale violated Code § 8.01-492 because it was conducted as a "secret sale" and such a sale runs afoul of the policy behind the

---

participated. Daniel A. Gecker, counsel for the hotel tenant, testified that the chilling effect of a "minimum bid" was discussed during the call.

[2] The parties' stipulation of facts states that, at the time of trial, Jefferson Properties Corporation was not yet formed, but would be a Virginia corporation owned by the same persons who own the hotel tenant.

statute, which requires an open and public sale.[3] Conversely, the hotel tenant and Koubek argue that the sheriff complied with the plain meaning of the statute in conducting the sale and, therefore, the trial court properly held that the sale was valid.

Code § 8.01-492 provides, in pertinent part:

> In any case of goods and chattels which an officer shall distrain or levy on, otherwise than under an attachment, or which he may be directed to sell by an order of a court, unless such order prescribe a different course, the officer shall fix upon a time and place for the sale thereof and post notice of the same at least ten days before the day of sale at some place near the residence of the owner if he reside in the county or city and at two or more public places in the officer's county or city. . . . At the time and place so appointed, such officer shall sell to the highest bidder, for cash, such goods and chattels, or so much thereof as may be necessary.

■ The notice requirements of this statute are straightforward and were satisfied when the sheriff posted notice at the two courthouses, two public places, in the City of Richmond. Koubek and the hotel tenant argue that this statutory compliance legitimates an execution sale conducted by a public officer which, by private agreement did not afford the public any opportunity, much less a meaningful opportunity, to participate. This argument frustrates the purpose and policy of the statute as reflected in its terms.

■ It is axiomatic that execution sales conducted by public officers under judicial process to effectuate a legal right are public sales. The policy underlying this presumption was articulated long ago and remains valid today:

> Execution sales are required to be made at public auction, and after due notice, in order that competition may be produced, and the property of the debtor be sold at its market value. Anything which tends to prevent this competition is likely to produce a sacrifice of the interests of the debtor, and perhaps of both debtor and creditor. It is also against public policy, and highly immoral, and whenever discovered will be

---

[3] Manufacturers Hanover assigns other errors to the trial court's ruling which we need not address in light of our holding.

stamped with marks of disapproval, both at law and in equity. Any agreement made between two or more persons to avoid or reduce competition at an execution or judicial sale is treated as fraudulent and void.

Freeman, 2 Law of Executions, § 297, at 1714 (3d ed. 1900).
█ Code § 8.01-492 affirms this policy by directing the officer to sell the items "to the highest bidder."[4] That language contemplates a competitive environment with more than one bidder. Competitive bidders may or may not materialize for any given set of sale items, but they clearly will not materialize when all buyers but one are precluded from participation in the sale. However, preclusion of competition was the result specifically sought and achieved by the hotel tenant and Koubek in this instance.

Initially, at the urging of the hotel tenant, the sheriff agreed to forego the customary, although not required, practice of advertising execution sales.[5] The sheriff's notice, posted at the two courthouses, advertised a "public auction."[6] Yet, the sale in this case was not conducted in a public area of the hotel; it was held in a private room in the hotel. These circumstances effectively limited the number of bidders and resulted in a private sale rather than the "public auction" advertised in the sheriff's notice.

Furthermore, the parties agreed that the sale price would be "the minimum bid" of $115,000 and that, if anyone else appeared to bid, the hotel tenant would purchase Koubek's judgment rights against the hotel owner for $115,000, an amount less than the value of the judgment. While the extent to which the sheriff's office was apprised of the complete agreement is unclear, the sheriff was aware of the $115,000 minimum bid agreement and that the procedure of sale would be altered if anyone other than the parties to the agreement were present at the sale.

---

[4] Manufacturers Hanover argues that the sheriff violated the statute by selling the furnishings at a price far below their obvious value. However, in addition to noting that the value of the furnishings was affected by the tenant's lease, we agree with the observations of the trial court that the sheriff is not in the appraisal business and should not be expected to make value judgments as to whether items are bringing a sufficient price. Under the competitive bidding process contemplated by the statute, that price would be set by the market.

[5] This concession was secured after a conference call with the trial court in which the court agreed that the sheriff need only comply with the statute.

[6] The notice stated that the sale would be held at 10:00 a.m. on June 19, 1989, at the Jefferson Sheraton Hotel, Franklin and Adams Street.

■ Code § 8.01-492 requires a public sale conducted in a manner which will attract multiple bidders to achieve the best price possible for the goods sold. Here, the parties imposed conditions on the sale in which the sheriff acquiesced, resulting in the elimination of additional bidders and the predetermination of the sale price. Consequently, the nature of the process changed from a public auction to a private sale which failed to comply with the express terms of the stated notice, and violated both the language and policy of the statute. Accordingly, we will reverse the judgment of the trial court, set the sale aside, and remand the case for further proceedings.

*Reversed and remanded.*