2008 UT App 153

Sonya Capri **BANGERTER**,
Plaintiff and Appellee,

v.

Ralph **PETTY**, an individual; Jarmaccc Properties, LLC, a Utah limited liability company; Jarmaccc, Inc., a Utah corporation; and John Does 1 through 10, individuals and entities whose true names are unknown, and who may claim some right, title, estate, lien, or interest in real property owned by Plaintiff, Defendants and Appellants.

No. 20060511–CA.

Court of Appeals of Utah.

May 1, 2008.

Ralph C. Petty, Salt Lake City, for Appellants.

James C. Haskins and Thomas N. Thompson, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., BILLINGS, and ORME, JJ.

1. The Bangerters divorced in April 2000. Sonya Bangerter was awarded the Property as part of the divorce settlement. Although her husband's

## OPINION

BILLINGS, Judge:

¶ 1 Defendants Ralph Petty, Jarmaccc Properties, LLC, and Jarmaccc, Inc. (collectively Jarmaccc) appeal the trial court's grant of summary judgment in favor of Plaintiff Sonya Capri Bangerter. Specifically, Jarmaccc argues that the trial court erred in determining that a sheriff's sale of Ms. Bangerter's house (the Property) is void because the sheriff's sale included an incorrect legal description or is estopped under the doctrine of equitable estoppel. We reverse and remand for proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Ms. Bangerter and her former husband Roger Scott Bangerter [1] purchased the Property in April 1994. Ms. Bangerter had an outstanding bill owed to her dentist, which was turned over to the North American Recovery Services collection agency (N.A.R.). On April 25, 1995, a judgment was entered against the Bangerters in the amount of $307.46. On August 14, 1995, a trial judge signed a writ of execution commanding the sheriff "to collect the judgment, with costs, interest, and fees, and to sell enough of defendant's non-exempt real property to satisfy the same."

¶ 3 On December 21, 1995, a deputy sheriff filed a notice of real estate levy against the Property. The notice stated:

Notice is hereby given, that under and by virtue of a Writ of Execution, issued out of the Circuit Court of the State of Utah, of which the annexed is a true copy, I have this day attached and levied upon all right, title, claim and interest of defendant(s), of, in and to the following described Real Estate, standing on the records of Salt Lake County, in the name of defendant, [ ] Bangerter, and particularly described as follows: BEG 67 FT E & 69 FT N OF SW COR LOT 68, GLENDALE PARK SUB, PLAT A; N 60 FT; E 120 FT TO BEG. 0.19 AC.

name appears on the writ of execution, no party has mentioned him as part of this lawsuit.

¶4 On March 8, 1996, the deputy sheriff signed a real estate certificate of sale execution against the Property, which was filed for record with the county recorder's office on March 28, 1996. The real estate certificate of sale identified the parties, case number, and the dates of the judgment rendered, execution issued, and sale of the Property. It also stated, in relevant part:

I hereby certify that under an Execution issued out of the Court in and for Salt Lake County, State of Utah, in an action pending in said Court in the above named suit, I was commanded to take the sum of $263.56, with interest, costs and Sheriff's fees, amounting in all to the sum of $958.02, to satisfy the judgment in said action by selling the unexempted real property of the said defendant. I have levied upon, and … after due and legal notice I sold at public auction, according to law, the real property to Jarmac[cc] L.L.C., for the sum of $1,550.00, which was the highest bid made for all the right, title, claim and interest of said defendants.... I further certify that said property is subject to redemption in lawful money of the United States of America, pursuant to the statute in such cases made and provided.

This document also included the same property description listed in the notice of levy.

¶5 The rules of civil procedure that were in effect at the time required the sheriff to serve upon the judgment debtor, in the same manner as service of a summons in a civil action, or cause to be transmitted by both regular and certified mail, returned receipt requested, to the judgment debtor's last known address as provided by the judgment creditor, (i) the notice of execution and exemptions and right to a hearing, and (ii) the application by which the judgment debtor may request a hearing. Upon service of the writ, the sheriff or constable may also set the date of sale or delivery and serve upon the judgment debtor notice of the date and time of sale or delivery in the same manner as service of the notice of execution and exemptions and right to a hearing.

Utah R. Civ. P. 69(g) (2004).

¶6 On September 16, 1996, a sheriff's deed was signed by the sheriff and N.A.R., ex-plaining that the sheriff had sold the Property according to law to N.A.R. for $1550 and that no redemption had been made. On November 12, 1996, Petty filed a request for notice concerning the Property, requesting notices of default or sale. On November 16, 1996, the sheriff's deed was recorded, noting (1) certain legal property was sold at a sheriff's sale on March 5, 1996, to N.A.R. for $1550, (2) more than six months had elapsed without any redemption of the property, and (3) the property was sold. The sheriff's deed conveyed the property to N.A.R. It also included the same property description as mentioned above.

¶7 On January 5, 1998, the sheriff filed an amended real estate certificate of sale execution. The amended certificate of sale execution identified the property as:

Beginning at a point 670 feet East and 69 feet North of the Southwest corner of Lot 68, GLENDALE PARK SUBDIVISION, PLAT "A", Salt Lake City, Utah, being in the Southwest quarter of Section 11, Township 1 South, Range 1 West, Salt Lake Base and Meridian, and running thence North 69 feet; thence East 120 feet; thence South 69 feet; thence West 120 feet to the point of beginning. SIDWELL # 15–11–331–010.

¶8 On January 20, 1998, N.A.R. filed a quitclaim deed in favor of Jarmaccc Properties, LLC, regarding the Property. On March 10, 1998, Bangerter filed a Chapter 13 bankruptcy petition. On May 14, 1998, Jarmaccc served Bangerter with a notice to quit, instructing her to vacate the Property, but this could not be pursued because of her pending bankruptcy action.

¶9 On April 23, 1999, Bangerter filed a second petition in bankruptcy. As part of her Chapter 13 plan, Bangerter listed Jarmaccc as a secured creditor and scheduled $1200 to be paid to Jarmaccc. Jarmaccc received a copy of Bangerter's bankruptcy plan but did not object. Bangerter paid Jarmaccc the full amount set out by the bankruptcy plan. The bankruptcy was dismissed on August 26, 2003 because of Ban-

gerter's failure to make payments, and no discharge was granted.

¶ 10 On January 6, 2004, Bangerter filed this action against Jarmaccc, seeking quiet title to the Property. On July 2, 2004, Bangerter filed a third Chapter 13 bankruptcy petition. During the pendency of the bankruptcy action, both parties filed motions for summary judgment to resolve the case. The court ruled in Bangerter's favor on May 4, 2006.

¶ 11 The trial court found:

1. The original sale of [Bangerter's] property contained an incorrect legal description and thus created a defective title which failed to convey any title to [Jarmaccc] or any other person or entity;

2. Jarmaccc Properties, L.L.C., was on notice of [Bangerter's] bankruptcy filing;

3. Jarmaccc Properties, L.L.C., received a copy of and failed to object to [Bangerter's] proposed Chapter 13 plan;

4. [Bangerter] paid [Jarmaccc] the full amount set out by the bankruptcy plan;

5. [Bangerter] will be injured if [Jarmaccc] is allowed to contradict its actions in accepting the payments made pursuant to the Chapter 13 plan;

. . . .

7. [Jarmaccc's] arguments concerning the statute of limitations and whether [Bangerter] was required to bring her defective deed action against the Sheriff of Salt Lake County are denied.

The trial court then quieted title in Bangerter and extinguished any claim by Jarmaccc to the Property. This appeal followed.

### ISSUE AND STANDARD OF REVIEW

¶ 12 Jarmaccc argues that the trial court erred in concluding no statute of limitations

barred Bangerter's action and granting summary judgment in favor of Bangerter. "Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Because summary judgment presents only questions of law, we give no deference to the district court's legal decisions and review them for correctness." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 10, 100 P.3d 1200 (citing Utah R. Civ. P. 56(c)).[2]

### ANALYSIS

¶ 13 Jarmaccc argues that Bangerter's suit is barred by the expiration of the statute of limitations. Jarmaccc asserts that the tolling date for the statute of limitations is January 20, 1998, the day N.A.R. conveyed the Property to Jarmaccc, or at the very latest, March 10, 1998, when Bangerter filed her first petition for bankruptcy. Jarmaccc contends that Bangerter "knew of" Jarmaccc before that date. Bangerter did nothing to attack either the sheriff's sale or Jarmaccc's ownership of the Property until she filed this action on January 6, 2004, almost six years later.[3]

¶ 14 On appeal, Jarmaccc offers three possible statutes of limitations which might bar Bangerter's action: Utah Code section 78–12–28(1), *see* Utah Code Ann. § 78–12–28(1) (2002) ("[a]n action may be brought within two years against a . . . sheriff . . . for liability incurred by the doing of an act in his official capacity"), Utah Code section 78–12–26(3), *see id.* § 78–12–26(3) (2002) ("[a]n action may be brought within three years . . . for relief on the ground of . . . mistake"), or the general statute of limitations, Utah Code section 78–12–25(3), *see id.* § 78–12–25(3) (2002) ("[a]n action may be brought within

2. Jarmaccc raises additional issues on appeal. However, because we conclude that the trial court did not err in concluding no statute of limitations barred Bangerter's action, we do not address the other issues raised on appeal.

3. In a signed affidavit dated June 1, 2004, Bangerter states "I never received any notice from any person that my home would be sold to any party as the result of the debt for dental services." This statement is in conflict with the sheriff's sworn statements in the certificate of

sale that he complied with the notice requirements. However, this factual question is ultimately immaterial because we conclude all the potentially applicable statutes of limitations expired before she brought her actions to void the title received pursuant to the sheriff's sale. Further, she does not deny receiving the May 14, 1998 Notice to Vacate Property and, in fact, in 1999 listed Jarmaccc as a secured creditor in her Chapter 13 bankruptcy plan.

four years ... for relief not otherwise provided for by law."). We need not analyze which of the three statutes of limitations is relevant as all of them expired before Bangerter brought her suit.

## I. Was the Affirmative Defense of Statute of Limitations Properly Pleaded?

¶ 15 Bangerter argues that the statute of limitations cannot bar her lawsuit because it was not specifically pleaded and proved at trial. Rule 9(h) of the Utah Rules of Civil Procedure mandates:

> In pleading the statute of limitations it is not necessary to state the facts showing the defense but it may be alleged generally that the cause of action is barred by the provisions of the statute relied on, *referring to or describing such statute specifically and definitely by section number, subsection designation, if any, or otherwise designating the provision relied upon sufficiently clearly to identify it.* If such allegation is controverted, the party pleading the statute must establish, on the trial, the facts showing that the cause of action is so barred.

Utah R. Civ. P. 9(h) (emphasis added).

¶ 16 In its first answer, Jarmaccc raised the statute of limitations by stating simply that "Plaintiff's claim against Defendants is barred under the doctrine of statute of limitations." However, our review of the record shows that in Jarmaccc's Rule 56(f) Motion for Order of Continuance to Conduct Discovery, dated June 15, 2004, and the accompanying memorandum in support, Jarmaccc quite clearly laid out its arguments concerning the various statutes of limitations. It offered both Utah Code section 78–12–26 and Utah Code section 78–12–28 as possible statutes of limitations that would bar Bangerter's claim. *See* Utah Code Ann. §§ 78–12–26, –28. Jarmaccc again explained its argument in its Reply Memorandum in Support of Defendant's Motion for Summary Judgment, dated November 23, 2004, and filed an amended answer which included Utah Code section 78–12–25(3), the general statute of limitations. Furthermore, the trial court considered and ruled upon these arguments.

¶ 17 Bangerter argues that *Conder v. Hunt,* 2000 UT App 105, 1 P.3d 558, prevents Jarmaccc from relying on its statute of limitations argument. In *Conder,* the defendants specifically pleaded two statutes of limitation, one for written contracts, and one for fraud. *See id.* ¶ 13. However, in their motions for summary judgment, the defendants argued only the statute applicable to fraud actions. *See id.* This court rejected the defendants' argument on the grounds that the plaintiffs had not actually alleged fraud in their complaint, but rather styled their complaint as one to quiet title. *See id.* ¶ 14. We concluded that because the defendants had not shown that their chosen statute of limitations applied, we would not consider other statutes of limitation that might have applied. *See id.* ¶¶ 14, 17. We find this case distinguishable from the one before us.

¶ 18 Bangerter and the trial court clearly had written notice of the three statutes of limitations at issue from documents filed with the court, including an amended answer. In fact, the trial court ruled on the issue. Moreover, which statute of limitations is applicable is irrelevant because all of the statutes Jarmaccc pleaded had passed before Bangerter brought her lawsuit.

## II. Quiet Title Action—No Statute of Limitations

¶ 19 The trial court may have determined that the statute of limitations arguments were without merit because, in Utah, no statute of limitations applies to a "suit[ ] brought to quiet the title to real property." *See In re Hoopiiaina Trust,* 2006 UT 53, ¶ 26, 144 P.3d 1129.

¶ 20 In *In re Hoopiiaina Trust, id.,* the Utah Supreme Court clarified the rule on statutes of limitations concerning actions to quiet title. We quote liberally:

> [I]t is clear that all actions, whether legal or equitable, are subject to a statute of limitations in Utah. However, suits brought to quiet the title to real property have always been an exception to this rule. A true quiet title action is a suit brought "to quiet *an existing title* against an ad-

verse or hostile claim of another," and "the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants." *Thus, the question becomes whether a claim is a true quiet title action or whether the claimant really seeks other relief; if the claim is a true quiet title action, it is not subject to a statute of limitations.* Courts must proceed cautiously when applying this rule, however, for parties should not be able to avoid the statute of limitations on other claims by simply disguising them as claims for quiet title relief.

... [A] court must examine the relief sought in order to determine whether the statute of limitations applies. When a party asserts a quiet title claim in which that party merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title, no statute of limitations applies. In other words, if it is not necessary that the court grant other relief in favor of the party, such as cancelling a deed on the basis of fraud, in order to rule on the quiet title claim, then the statute of limitations cannot operate as a bar to the party's quiet title claim. *Thus, in order to determine whether the statute of limitations applies to a quiet title claim, the court must assess on what basis the party would be entitled to have title quieted. If the party is entitled to have title quieted only if the court first finds in his or her favor on another legal issue, then the same statute of limitations that applies to that legal issue will also apply to the quiet title claim.* Similarly, a party may seek to quiet title to real property in addition to requesting other relief in the same action. Despite the fact that no statute of limitations applies to a true quiet title claim, the respective statutes of limitation applicable to the party's other claims for relief may operate to bar those claims. *If the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute of limitations applicable to the other claim will also apply to the quiet title claim.*

*Id.* ¶¶ 26–27 (last three emphases added) (citations omitted).

■ ¶ 21 We must evaluate, then, whether Bangerter's action is a "true" quiet title claim. We conclude that it is not. Bangerter's suit against Jarmaccc is necessarily predicated on a challenge to the validity of the sheriff's sale and the title deed which was a result of that sale. Without that underlying challenge, she has no claim against Jarmaccc, who rightfully received the Property from N.A.R., who fairly purchased it at a sheriff's sale. In fact, without first challenging the sheriff's sale, Bangerter does not have title to the Property and cannot quiet it. Thus, Bangerter can only succeed on an action to quiet her title to the Property if the court first invalidates the sheriff's sale. Bangerter's action here is thus not a "true" action to quiet title, and, under *Hoopiiaina,* some statute of limitations applies. *See id.* As previously noted, it is irrelevant which statute of limitations applies, because they all passed prior to Bangerter's initiation of this lawsuit.

¶ 22 Bangerter attempts to distinguish *Hoopiiaina* from this case. She argues that *Hoopiiaina* did not deal with a situation where someone was in "actual and continuous possession of the property." She relies on *Conder v. Hunt,* 2000 UT App 105, 1 P.3d 558, which was decided before *Hoopiiaina* and in dicta "recognize[d] the general rule ... that those in actual possession of real estate are never barred by any statute of limitation from seeking to quiet their title." *Id.* ¶ 17. In *Conder,* we noted that "[w]hile no Utah case cited by the parties specifically adopts this rule, a number of cases seem to assume that Utah adheres to it." *Id.* We specifically stated that "a definitive ruling on the question must await a case in which it is more squarely in issue." *Id.*

¶ 23 We conclude *Conder* and *Hoopiiaina* are consistent. A person in possession who seeks to quiet their *own* title is not barred by any statute of limitations. In this case, Bangerter no longer had the title to the Property. Thus, Bangerter is not pursuing a "true" quiet title action because she did not have

the title to the Property at the time she was in possession of the Property and brought her lawsuit. She therefore is not free from the constraints of a statute of limitations. Accordingly, we conclude that the statute of limitations bars her suit.

¶ 24 We reverse the trial court's grant of summary judgment in Bangerter's favor, and direct the trial court to grant summary judgment in Jarmaccc's favor because Bangerter's lawsuit is barred by the statute of limitations.

¶ 25 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

¶ 26 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.