2010 UT App 49

**Sonya Capri BANGERTER,**
**Plaintiff and Appellee,**

v.

**Ralph PETTY, an individual; Jarmaccc Properties, LLC, a Utah limited liability company; and Jarmaccc, Inc., a Utah corporation; et al., Defendants and Appellants.**

**No. 20060511–CA.**

Court of Appeals of Utah.

Feb. 25, 2010.

Ralph C. Petty, Salt Lake City, Appellant Pro Se and for Appellants.

James C. Haskins, Ryan M. James, and Thomas N. Thompson, Salt Lake City, for Appellee.

Before Judges ORME, BILLINGS, and GREENWOOD.[1]

## OPINION

BILLINGS, Senior Judge:

¶ 1 This case involves a sheriff's sale of Sonya Capri Bangerter's house to cover an outstanding dental bill. We previously addressed this case in *Bangerter v. Petty* (*Bangerter I*), 2008 UT App 153, 184 P.3d 1249, in which we held that Bangerter's claims were barred by the statute of limitations. *See id.* ¶ 21. Concluding that the statute of limitations had not expired, the Utah Supreme Court reversed our decision in *Bangerter I* and remanded the case so that we could address the remaining issues. *See Bangerter v. Petty* (*Bangerter II*), 2009 UT 67, 641 Utah Adv. Rep. 9, ¶ 1, 225 P.3d 874. Although the facts have been recited in both *Bangerter I* and *Bangerter II*, we revisit those relevant to this opinion.

¶ 2 Bangerter had an outstanding bill owing to her dentist, which was turned over to the North American Recovery Services collection agency (N.A.R.). On April 25, 1995, a judgment was entered against Bangerter for $307.46. On August 14, 1995, a trial judge signed a writ of execution commanding the sheriff "to collect the judgment, with costs, interest, and fees, and to sell enough of defendant's non-exempt real property to satisfy the same." On December 21, 1995, the sheriff filed a notice of real estate levy against Bangerter's house (the Property). The Property was sold to N.A.R. on March 5, 1996, and three days later, the sheriff signed

a Real Estate Certificate of Sale Execution against the Property, which was recorded with the Salt Lake County Recorder's Office on March 28, 1996. That certificate of sale stated that the sheriff had given "due and legal notice," which implies he followed the notice requirements in effect at that time under rule 69(g) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 69(g) (2004).

¶ 3 On September 16, 1996, more than six months after the sale of the Property, the sheriff signed a sheriff's deed, deeding the Property to N.A.R. and noting that Bangerter had not redeemed the Property in the six-month redemption period. That sheriff's deed contained an error in the legal description of the Property. On January 5, 1998, the sheriff filed an amended sheriff's deed, correcting the legal description. N.A.R. delivered a quitclaim deed in favor of Jarmaccc Properties, LLC, transferring the Property to Jarmaccc. The deed was recorded on January 20, 1998.

¶ 4 On March 10, 1998, Bangerter filed a Chapter 13 bankruptcy petition. On May 14, 1998, Jarmaccc served Bangerter with a notice to quit, instructing her to vacate the Property but the notice could not be pursued because of the bankruptcy petition. On April 23, 1999, Bangerter filed a second petition in bankruptcy, this time listing Jarmaccc as a secured creditor and scheduling $1200 to be paid to Jarmaccc. Jarmaccc received a copy of Bangerter's plan but did not object, and accepted the $1200. On August 26, 2003, the bankruptcy was dismissed. On January 6, 2004, Bangerter filed this action against Jarmaccc, seeking to quiet title to the Property. Both parties filed motions for summary judgment, and the court ruled in Bangerter's favor on May 4, 2006.

¶ 5 On appeal, we determined that Bangerter's action was barred by the statute of limitations because she filed her suit in 2004, nearly nine years after the original judgment was entered against her. *Bangerter I*, 2008 UT App 153, ¶ 21, 184 P.3d 1249. Although we recognized that actions for quiet title do not have a statute of limitations, we conclud-

1. The Honorable Judith M. Billings and the Honorable Pamela T. Greenwood, Senior Judges, sat by special assignment pursuant to Utah Code

section 78A-3-103(2) (2008) and rule 11-201(6) of the Utah Rules of Judicial Administration.

ed that Bangerter's action was not a *true* quiet title action because it was "necessarily predicated on a challenge to the validity of the sheriff's sale and the title deed which was a result of that sale." *Id.* Our decision was reversed by *Bangerter II,* when the supreme court determined that "the statute of limitations does not apply to quiet title actions where the claimant is in actual possession of the property in question under a claim of ownership." 2009 UT 67, ¶ 11, 225 P.3d 874. The supreme court remanded the case to us to address the remaining issues. *See id.* ¶ 18.

## ISSUE AND STANDARD OF REVIEW

¶ 6 We now consider whether the trial court erred in granting Bangerter's motion for summary judgment. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We "review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Collateral Attack/Voidable Versus Void Deed

¶ 7 The trial court found that "[t]he original sale of [Bangerter]'s property contained an incorrect legal description and thus created a defective title which failed to convey any title to [Jarmaccc] or any other entity." Jarmaccc contends that the incorrect legal description, later corrected, rendered the title merely voidable, not void. Therefore, Jarmaccc argues that Bangerter's claim is an improper collateral attack on the validity of the sheriff's sale.

¶ 8 It has long been the rule that "[a] voidable sale or a voidable deed cannot be attacked in a collateral proceeding. This must be done in a direct proceeding. Only void deeds or void proceedings are available

for collateral attacks." *Ammerman v. Linton,* 279 Mo. 439, 214 S.W. 170, 173 (1919); *see also Cumberland Bank v. Smith,* 43 S.W.3d 908, 910 (Tenn.Ct.App.2000) ("A collateral attack on a prior judgment may be successful if the judgment is void because the court rendering the judgment acted in a manner inconsistent with due process of law. But a judgment is not subject to collateral attack for mere errors or irregularities committed by the court in the exercise of its jurisdiction. Errors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." (citations and internal quotation marks omitted)).

¶ 9 Utah followed this general principle in *Acott v. Union Carbide Nuclear Co.* (*Acott II* ), 10 Utah 2d 140, 349 P.2d 620 (1960), when the Utah Supreme Court refused to hear a counterclaim that merely disguised a collateral attack on a sheriff's sale. *See id.* at 621. *Acott II* was a "sequel" to *Acott v. Tomlinson,* 9 Utah 2d 71, 337 P.2d 720 (1959) (*Acott I* ), in which a sheriff's deed was issued to Union Carbide. *See id.* In *Acott II,* third party defendant/appellant Tomlinson asked that the sheriff's sale be declared void, arguing that Union Carbide "knew or should have known that the execution sale was wrongful." *Id.* The *Acott II* court determined that Tomlinson's claim was improper because it was an attempted collateral attack on the title and therefore not adjudicable. *See id.*

¶ 10 Thus, as a threshold matter, we must determine whether the trial court erred in concluding the sheriff's sale was void. In the context of fraudulent conveyances, the Utah Supreme Court wrote that "when an act is void as to persons who have an interest in impeaching it, the act is not utterly void, but merely voidable.... [S]ome action must be taken by the complaining party to render a conveyance void." *Baldwin v. Burton,* 850 P.2d 1188, 1193 (Utah 1993). More recently, in *Ockey v. Lehmer,* 2008 UT 37, 189 P.3d 51, the Utah Supreme Court was asked to determine whether a conveyance of an interest in a ranch was void or merely voidable. *See id.* ¶¶ 15–24. In that case, one of the beneficiaries of a family trust contested a conveyance

of his interests. *See id.* ¶ 10. The court wrote

> A contract or a deed that is void cannot be ratified or accepted, and anyone can attack its validity in court. In contrast, a contract or deed that is voidable may be ratified at the election of the injured party. Once ratified, the voidable contract or deed is deemed valid. A deed that is voidable is valid against the world, including the grantor, because only the injured party has standing to ask the court to set it aside.
>
> In general, the difference between void and voidable contracts is whether they offend public policy. Contracts that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable. Only contracts that offend public policy or harm the public are void ab initio.
>
> . . . .
>
> For a contract to be void on the basis of public policy, there must be a showing free from doubt that the contract is against public policy.

*Id.* ¶¶ 18–19, 21 (footnotes and internal quotation marks omitted).

¶ 11 Other jurisdictions have addressed this question in the context of sheriff's sales. In *Independence One Mortgage Corp. v. Gillespie,* 289 N.J.Super. 91, 672 A.2d 1279 (Ct. App.Div.1996), the Superior Court of New Jersey was asked to invalidate a sheriff's sale where the sale took place at 11:00 a.m. despite the statute requiring that such sales take place between noon and 5:00 p.m. *See id.* at 1280. That court relied on the rule that "a void act results where the public officer has no authority to act at all, whereas a voidable act results from the officer's imperfect execution of an otherwise lawful act" and determined that the sale was voidable, not void, because the sheriff had the appropriate authority to conduct the sale even if "it was imperfectly executed." *Id.* at 1281.

¶ 12 Similarly, in *Lang v. Barrios,* 472 N.W.2d 464 (N.D.1991), a property owner challenged the sheriff's sale of his property, arguing that there had been irregularities in the sale process. *See id.* at 465. The North Dakota Supreme Court stated,

> Whether an execution sale has been timely attacked, and can be set aside, depends, in part, on whether the sale is void or voidable. A void sale is a nullity and can, therefore, be attacked anytime. A sale is void if the sheriff lacked jurisdiction over the property, as in the case of inadequate notice, or when an execution is issued on a void judgment. A voidable sale is one where the sheriff has authority to make the sale but exercises that authority in a manner that allows an interested party to challenge the sale, as when the sheriff fails to follow a manner-of-sale statute.

*Id.* at 466 (citations omitted). The court concluded that the sale was voidable, not void, because the sheriff had the authority to conduct the sale. *See id.*

¶ 13 The Appellate Court of Illinois took up the issue in *Chicago v. Central National Bank,* 134 Ill.App.3d 22, 89 Ill.Dec. 34, 479 N.E.2d 1040 (1985). Central National Bank challenged the validity of a sheriff's sale, arguing that the statutory notice requirements had not been met. *See id.* 89 Ill.Dec. 34, 479 N.E.2d 1040 at 1042. The court held that the sheriff's sale was voidable, not void, because "irregularities with respect to statutory notice and advertising requirements render the sale voidable in the sense that the sale may be set aside upon motion made before the statutory period of redemption has expired." *Id.* 89 Ill.Dec. 34, 479 N.E.2d at 1044–45.

¶ 14 Based on the foregoing case law, we conclude that the sheriff's sale in this case was voidable, not void. An incorrect property description on the deed—especially one that is promptly corrected—is a rather minor irregularity in the proceedings. Bangerter has not challenged the sheriff's authority to conduct the sale. Thus we conclude that the sale cannot be attacked collaterally in this proceeding but must be attacked directly in a suit against the sheriff.[2] We therefore re-

---

**2.** Although it appears problematic to allow suit against the sheriff at this point in time, *Bangerter*

*II* seems to require it.

**1254**

verse and remand to allow Bangerter to move the court to set aside the sheriff's sale.

## II. Equitable Extension of the Redemption Period [3]

■ ¶ 15 "There is a general policy to sustain a sheriff's sale" unless "[it is] manifestly unfair ... especially ... in Utah which has a substantial period of redemption." *Beesley v. Hatch,* 863 P.2d 1319, 1322 (Utah 1993). In *Beesley v. Hatch,* 863 P.2d 1319 (Utah 1993), we offered as examples of manifest unfairness, "gross irregularities, mistake, fraud, or collusion." *Id.*

■ ¶ 16 Furthermore, Utah courts are allowed to extend a redemption period or set aside a sheriff's sale after the period for redemption if "the equities of the case are compelling and 'move the conscience of the court.'" *Huston v. Lewis,* 818 P.2d 531, 535 (Utah 1991) (quoting *Mollerup v. Storage Sys. Int'l,* 569 P.2d 1122, 1124 (Utah 1977)). We recently addressed a trial court's authority to grant equitable extensions of the redemption period in *Pyper v. Bond,* 2009 UT App 331, 643 Utah Adv. Rep. 3, 224 P.3d 713, *cert. granted,* No. 20091025, 225 P.3d 880 (Feb. 18, 2010), where we applied a two-part test for equitable extensions: (1) "gross inadequacy of price" and (2) "irregularities attending the sale." *Id.* ¶ 11.[4] In *Pyper,* we relied on "the seminal Utah case" of *Young v. Schroeder,* 10 Utah 155, 37 P. 252 (1894). In *Young,* the court set aside a sheriff's sale even after the period for redemption, explaining,

"[I]f the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property or party interested has been for any other reason misled or surprised, then

the sale will be regarded as fraudulent and void[able [5]], or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

*Id.* at 254 (quoting *Graffam v. Burgess,* 117 U.S. 180, 192, 6 S.Ct. 686, 29 L.Ed. 839 (1886)). In *Young,*

[l]and worth $26,000 was sold to satisfy a judgment of $1,700, the purchasers were the attorneys for the judgment debtor, the purchasers directed the land to be sold in parcels in a manner that prevented the land from being sold at a fair price, and the purchasers assured the debtor that they would not insist on the statutory period for redemption.

*Huston,* 818 P.2d at 535–36. The *Young* court addressed both the inadequacy of the price and the irregularity of the proceedings. It remarked, however, that

[i]f the inadequacy [of the price] is so gross as at once to shock the conscience of all fair and impartial minds, if the sacrifice is such that every honest man would hesitate to take advantage of it, it may well be doubted whether every such case would be beyond the power of a court of equity to relieve against.

*Young,* 37 P. at 254.

¶ 17 Building on this analysis, the *Pyper* court affirmed the trial court's determination that the sale of Pyper's $75,000 of equity in his property for $329 "shock[ed] the conscience of an impartial mind" and was "[such a] sacrifice of [Pyper's] property ... that an honest man would hesitate to take advantage of it." 2009 UT App 331, ¶ 12 n. 5, 643 Utah Adv. Rep. 3, 224 P.3d 713 (alterations and omission in original).

---

3. We include this section as legal guidance for the trial court to use in the evidentiary hearing on remand.

4. This formulation was crafted by the Respondents in *Pyper v. Bond,* 2009 UT App 331, 643 Utah Adv. Rep. 3, 224 P.3d 713, and, although "[w]e accept[ed][it] as a general statement of the appropriate method for establishing the district court's authority to grant equitable extensions,"

we also "express[ed] no opinion on whether [the] two-part test represents the exclusive avenue for a district court to extend the redemption period." *Id.* ¶ 11 & n. 3.

5. The court uses the word "void," but for the reasons explained in the previous section, we think it should be understood as meaning "voidable."

¶ 18 Still, and we think this is important in this case, the *Young* court's rule was not without constraint:

> All the cases unite in the doctrine that on gross inadequacy of price, coupled with irregularities attending the sale, *especially where such irregularities are not merely formal and technical, but such as have a direct tendency to prevent the realizing of a fair price for the property sold, and are attributable to the purchaser at the sale, it is the duty of the courts to set aside the sale, unless the complaining party is estopped by his own laches.*

37 P. at 254 (emphasis added). The timeliness of the judgment debtor's request to set aside the sheriff's sale was not at issue in either *Young* or *Pyper* because both of those cases were brought within days or months of the end of their respective redemption periods. Laches could be a factor here, where the action to set aside the sheriff's sale was initiated approximately nine years after the sale.

¶ 19 The trial court will be required to hold an evidentiary hearing because many of the relevant facts are not in the record. Bangerter's brief contends that she did not have notice of the sale and thus did not have the opportunity to challenge it or protect her rights at the execution sale. However, Bangerter filed no affidavit stating she never received notice of the sale at her home where she was residing, and because the trial court did not hold an evidentiary hearing, there are no facts in the record supporting her contentions.

¶ 20 However, the record makes clear that, at least according to his sworn documents, the sheriff served all the appropriate notices. The trial court on remand will be required to determine whether Bangerter had notice of the sheriff's sale.

¶ 21 It instinctively seems unfair that Bangerter would lose her home for the failure to pay a $307.46 dental bill. However, even this is without factual foundation because the rec-

ord does not contain any information regarding the value of the house, or Bangerter's equity in it, so it is difficult to know how inadequate the sale price was.

¶ 22 After hearing the relevant evidence, the trial court will also be required to determine if Bangerter's failure to act within a reasonable period of time precludes her from asserting equitable redemption because of her own laches.

## CONCLUSION

¶ 23 In sum, we remand to the trial court for a factual hearing on whether the sale should be voided, or if the sale "moves the conscience of the court," such that equitable redemption should apply, which, following *Young* and *Pyper*, will involve a balancing of whether the sale price was grossly inadequate, whether there were gross irregularities in the proceedings, and whether Bangerter is barred by her own laches.[6]

¶ 24 WE CONCUR: GREGORY K. ORME, Judge, and PAMELA T. GREENWOOD, Senior Judge.

---

**6.** The trial court held as a matter of law that Jarmaccc is equitably estopped from claiming title to the property. We reverse and remand on this issue. We think the doctrine of equitable redemption is the more appropriate approach in this case and are dubious whether the facts will support a finding that Jarmaccc is equitably estopped, but since an evidentiary hearing is required, we give the trial court the option to consider equitable estoppel.