2015 UT App 159

## THE UTAH COURT OF APPEALS

RUTH B. HARDY REVOCABLE TRUST, DELCON CORPORATION PSP
FBO A. WESLEY HARDY, FINESSE PSP, MJS REAL PROPERTIES,
UINTAH INVESTMENTS, DAVID D. SMITH, STEVEN CONDIE,
DAVID L. JOHNSON, BERRETT PSP, VW PROFESSIONAL HOMES PSP,
TY THOMAS, AND D.R.P. MANAGEMENT PSP,
Plaintiffs and Appellees,
*v.*
MARK L. RINDLESBACH,
Defendant and Appellant.

Memorandum Decision
No. 20140075-CA
Filed June 25, 2015

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 080913314

James K. Tracy, Stacy J. McNeill, and
James C. Dunkelberger, Attorneys for Appellant

James C. Swindler, Attorney for Appellees

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1     Mark L. Rindlesbach, in his capacity as trustee of the
Rindlesbach Construction Inc. Profit Sharing Plan (the Plan),
appeals the district court's decision denying the Plan's objection

to a writ of execution.[1] The Plan argues that due to defects in the writ of execution, the writ failed to comply with applicable rules in a way that "affected the outcome of the sale" of its property. Accordingly, the Plan requests that we void the sheriff's sale of its property and require the writ to be re-issued in compliance with the rules of civil procedure before the property is sold. We reverse the district court's ruling and remand for further proceedings.

¶2    In 2007, the appellees in this case—a group of twelve lenders (the Lenders)—made a $3.3 million loan to a borrower who was seeking to purchase a large tract of land for development. The loan was guaranteed by the Plan along with eight other guarantors. When the borrower failed to pay back the loan, the Lenders sought recovery from all of the guarantors. By the time of trial, the Plan was the only guarantor remaining that had not declared bankruptcy and that had not had its liability discharged. A verdict was ultimately entered against the Plan, and the court entered judgment in favor of the Lenders in the amount of $6,367,203.64.

¶3    Following the entry of judgment, the Lenders applied for a writ of execution directing the sale of "[a]ny and all claims and causes of action of Mark Lee Rindlesbach, Trustee of the Rindlesbach Construction Inc. Profit Sharing Plan."[2] The Plan objected to the writ, arguing that it failed to give a detailed description of the property to be sold as required by rule 64 of the Utah Rules of Civil Procedure. At a hearing on the objection, the district court determined "that the specificity of the

---

1. Where appropriate due to context, we refer to Rindlesbach personally instead.

2. For ease of reference throughout the remainder of this decision, we refer to both the writ of execution and the application for the writ of execution as "the writ" because the application was attached to and incorporated by reference in the actual writ of execution.

description really is a factual matter for each case" and "the broad language" used in the writ at issue was "appropriate." The court also stated,

> [T]he time for [the] debtor in this case to show some prejudice from the broad description used in the writ in this case was now—was to come forward and show a potential exemption or to show a potential reduction in bidders, not in theory, not based on an inflexible reading of the rule, but in actuality using facts . . . .

The property was sold at auction in accordance with the writ, and the Lenders, as the only bidder, acquired the property with a credit bid of $200,000 against the amount of their judgment.

¶4      On appeal, the Plan argues that the writ "was improperly issued because the description of the property to be sold does not describe any item of property with sufficient specificity." The Plan points to rules 64 and 64E of the Utah Rules of Civil Procedure in support of its argument. A party seeking a writ of execution must file an application stating the "nature, location and estimated value of the property." Utah R. Civ. P. 64E(b)(2). Once the writ of execution is issued, "the clerk shall attach to the writ plaintiff's application, detailed description of the property, the judgment, notice of exemptions and reply form."[3] *Id.* R.

---

3. The Lenders argue that the Plan's "improper issuance argument hangs on a phrase found in . . . Rule 64, which imposes certain ministerial duties on the clerk *after* issuing a writ of execution." While they argue that the description was sufficiently specific, the Lenders assert if any error occurred, it was the clerk's error, because the rule requires the clerk to attach the detailed description of the property. We reject this reading of the rule. "We read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Pearson v. South Jordan City*,

(continued...)

64(d)(2)(C). The Plan argues that the writ in this case "did not even come close to providing a *detailed* description. Rather, the [w]rit provided a *bare* description of the category of property to be sold." It argues that the writ's direction to sell "[a]ny and all claims and causes of action" was only a general description of a

---

(…continued)
2012 UT App 88, ¶ 18, 275 P.3d 1035 (alteration in original) (citation and internal quotation marks omitted). When read separately, these two requirements—the requirement in rule 64E(b) that the judgment holder describe the "nature, location and estimated value" of the property to be sold in the writ application and the requirement in rule 64(d)(2) that the clerk attach a specific description of the property to the writ itself— might be seen as allocating distinct information-gathering roles to the two. But such a reading cannot survive the broader context. The rules dealing with the collection of judgments provide a judgment creditor with a number of tools for gathering information about the debtor's property. For example, under rule 64(c)(2), judgment creditors, at the court's discretion, may conduct discovery, subpoena witnesses, and request hearings "as necessary to identify property and to apply the property toward the satisfaction of the judgment or order." Utah R. Civ. P. 65(c)(2). In fact, the identification of a debtor's property may well have started in discovery, even before judgment is rendered. Thus, the judgment creditor has a wide array of tools for collecting information about debtor property subject to execution. The rules give the clerk, on the other hand, no such ability, much less the resources to conduct such an inquiry, with regard to every application for writ of execution that is presented. As a consequence, there is no merit to the proposition that the wording of the rule is meant to shift the burden to identify specific debtor property subject to sale from the judgment creditor to the court clerk once the application is submitted. Rather, the responsibility to identify specific property for sale remains with the judgment creditor, whom the rules abundantly equip to discover such information.

category of property and that the writ did not provide potential buyers with enough information for them to be able to discern what exactly was being sold. The Plan argues the need for a more specific description of the claims and causes of action at issue "is self-evident" because such a general description in the context of the sale of any other type of property would never be sufficient. For example, the Plan asserts that a creditor executing on vehicles could not just state "all vehicles owned by the defendant" in the writ but instead would have to provide specific information about the vehicles such as "make, model year, and VIN . . . so that both the judgment debtor and potential bidders would know whether there were appropriate exemptions, what property is being sold, and what would be an appropriate bid."

¶5 The Plan argues that the writ's failure to provide more specific information about the claims and causes of action being sold introduced "an unacceptable level of vagueness and uncertainty in the sales process" and likely impacted the number and value of bids received at auction. It contends that "[w]ithout more information, it would be impossible for a bidder to determine whether the nature and value of the property warrants any bid whatsoever." The Plan argues that the writ for the claims and causes of action at issue here should have included "the name of the case, the case number, and the Court in which the case is pending." The Plan points to the fact that the Lenders were aware of a pending lawsuit between the Plan and the City of Saratoga Springs. The Plan contends that "[c]learly, the City of Saratoga Springs . . . would have been an interested party at a sale in which a claim the City was defending was being sold." However, the Plan argues, the writ's failure to identify the claim beyond the more general description of "[a]ny and all claims and causes of action" prevented "the City [or] any other bidder" from "hav[ing] enough certainty about what they were bidding on to feel comfortable making a bid at the execution sale." The Plan accordingly argues that the sale was affected by the writ's defects and that the district court's refusal

to sustain the Plan's objection to the writ "was not harmless error."

¶6     The Lenders point us to *Bangerter v. Petty*, 2010 UT App 49, 228 P.3d 1250. In *Bangerter*, we declared, "There is a general policy to sustain a sheriff's sale unless [it is] manifestly unfair . . . ." *Id.* ¶ 15 (alteration in original) (citation and internal quotation marks omitted). Examples of manifest unfairness include "gross irregularities, mistake, fraud, or collusion." *Id.* (citation and internal quotation marks omitted). The Lenders contend that the Plan has failed to meet its burden of demonstrating manifest unfairness. They argue that the Plan has failed to show the sale would have resulted in a better price even with a more specific description and that the irregularities were substantial rather than merely technical. Moreover, they contend that where the Plan was "evasive in [its] testimony" and "conceal[ed] the existence of potential claims, [it] should not be heard to complain that [its] claims were not better identified and more thoroughly described."

¶7     It is important to note, however, that the Plan is not appealing the district court's denial of a motion filed after the execution sale to set the sale aside. Instead, the Plan is arguing that the district court's decision to allow the sale to go forward over the Plan's pre-sale objection was error. All of the cases that the Lenders have pointed us to have dealt with objections that were made to irregularity in execution or trustee sales *after* the sale took place, not *before. See, e.g.*, *Timm v. Dewsnup*, 2003 UT 47, ¶ 34, 86 P.3d 699; *Commercial Bank of Utah v. Madsen*, 236 P.2d 343, 344 (Utah 1951); *Bangerter*, 2010 UT App 49, ¶ 7. We have not located any cases that have addressed an appeal from a district court's decision to allow an execution sale to proceed over a party's objection of irregularity brought before the sale rather than after. Accordingly, the appropriate standard and analysis we are to apply in such a case is essentially a matter of first impression and is not governed by the cases to which the Lenders have pointed. However, we conclude that the facts of this case allow us to come to a resolution without having to

decide more generally the issues that arise from this case's unique procedural posture.

¶8     First, we note that "[t]he public auction procedure provides a key safeguard for a judgment debtor because the public nature of the sale provides an opportunity for the open market to determine the value of the judgment debtor's property." Kristopher Wood, Comment, *Short Circuiting the Justice System: How Defendants Are Misusing Writs of Execution*, 39 Pepp. L. Rev. 747, 754 (2012) (alteration in original) (citation and internal quotation marks omitted); *cf. Snow, Nuffer, Engstrom, & Drake v. Tanasse*, 1999 UT 49, ¶¶ 12–14, 980 P.2d 208 (determining that permitting a law firm to purchase a legal malpractice claim against itself violates public policy in part because then "the appropriate value of the legal malpractice claim will never be fairly determined"); *Brigham Truck & Implement Co. v. Fridal*, 746 P.2d 1171, 1173 (Utah 1987) (per curiam) (noting that a sale was commercially reasonable because "[t]he public, upon proper notice, was invited to participate and given an opportunity to bid upon a competitive basis"). Public sales are "made at auction to the highest bidder" and allow "all persons . . . the right to come in and bid." *Johnson Cotton Co. v. Cannon*, 129 S.E.2d 750, 755 (S.C. 1963). These sales provide "a competitive environment with more than one bidder." *Manufacturers Hanover Trust Co. v. Koubek*, 396 S.E.2d 669, 672 (Va. 1990).

¶9     We therefore recognize the Plan's concern that these purposes might have been frustrated by the lack of specificity in the writ, which resulted in a notice of sale containing the disputed language: "[a]ny and all claims and causes of action." The inability of a potential purchaser to identify from the notice of sale what he or she is buying might well hamper the ability of the open market to determine the value of the property being sold. This is because such a sale may not attract potential bidders interested in the specific property being sold, undermining the competitiveness of the sale. However, for the reasons explained below, and under the specific circumstances of this case, we conclude that the Plan has largely failed to show that such harm

was threatened or occurred due to the highly speculative nature of the majority of the claims it brought to the district court's attention. But we ultimately agree with the Plan that the claim it asserted involving the City of Saratoga Springs was not described in sufficient detail to accomplish the salutary purposes of execution sales.

¶10    In support of its argument that the description attached to the writ of execution was too general to properly identify the property being sold, the Plan identifies five individuals or entities against which the Plan had claims that the Lenders were aware of: (1) John Jacob, (2) Heritage West Credit Union, (3) SL6, (4) Stone River Falls, and (5) the City of Saratoga Springs. At the hearing before the district court on the Plan's objection to the writ, the Lenders argued that the Plan should not be able to argue that it would suffer harm from the general description when it had either refused to provide the Lenders with more details about these claims or so denigrated their value as to make separate identification pointless. The district court judge appeared to agree, stating,

> Well, it seems to me that the specificity of the description really is a factual matter for each case, and the time for [the] debtor in this case to show some prejudice from the broad description used in the writ in this case was now—was to come forward and show a potential exemption or to show a potential reduction in bidders, not in theory, not based on an inflexible reading of the rule, but in actuality using facts . . . .

We agree with the district court that the analysis required here is fact intensive. Accordingly, we turn to the evidence before us to determine whether the district court abused its discretion in determining that the Plan would suffer no harm by allowing the sale to proceed under the general description provided by the Lenders.

¶11    The Lenders acknowledged a potential claim against Jacob in their response to the Plan's objection. They noted that

Rindlesbach had listed a claim of $890,000 against Jacob on his financial statements in 2008. However, they argued that the Plan had conceded this debt was uncollectable and of no value. When asked specifically about the Jacob claim under oath at a supplemental proceeding, Rindlesbach responded that he "didn't have a strong note," and when asked if he thought the debt was collectable, he responded, "No." The Plan made no effort to contest the Lenders' characterization of this claim at the hearing. We are not persuaded that the district court abused its discretion in determining that the writ of execution's failure to specifically identify the Plan's claim against Jacob was unlikely to prejudice the outcome of the sale when the Plan itself appears to have conceded that the claim was essentially worthless.

¶12 The Heritage West and SL6 claims stand on even weaker ground. During the same supplemental proceeding, counsel for the Plan stated that the Plan "[p]otentially" had a claim against "Heritage West, but we haven't brought a claim," and Rindlesbach stated no more than that "I would like to get my money back from SL6." The Plan provided no further information about these claims at the proceeding. And the Plan failed to even raise these claims to the court's attention at the objection hearing. *Cf. Hill v. Estate of Allred*, 2009 UT 28, ¶ 64, 216 P.3d 929 ("As a general rule, claims not raised before the trial court may not be raised on appeal." (citation and internal quotation marks omitted)). Given that the Plan had provided the Lenders with no information about the nature of these claims and failed to even discuss them at the objection hearing, it is difficult to understand how the district court's failure to require the writ's property description to include any specific reference to these claims can be judged an abuse of discretion.

¶13 Similarly, the Plan has failed to convince us that the Lenders or the district court had sufficient information about any claims involving Stone River Falls to identify them more specifically. The Plan points us to statements in the record where the Lenders acknowledge that they "discovered transactions that may give rise to claims of [the Plan]" against this party. However, the statements the Plan points us to do not persuade as that the Lenders had any real knowledge of either the true

nature or value of these potential claims. The statements are merely a list of everything the Lenders had been able to discover about Stone River Falls but are inconclusive as to whether the Lenders had actually been able to discern the specific parties, property, and value of the claims involved. Further, the statements include an allegation by the Lenders that Rindlesbach was sympathetic to one of the parties involved with Stone River Falls and had "no interest" in bringing suit anyway. Given that no additional information was provided by the Plan about these claims at the objection hearing, we are unconvinced that the district court abused its discretion in failing to require a more specific description.

¶14    Finally, the Plan asserted at the objection hearing that it had a claim against the City of Saratoga Springs that ought to have been separately identified. This claim was a counterclaim in a suit by Saratoga Springs against the Plan. At the hearing, the Plan described the claim as one "for reimbursement of money spent on building a collector road." The Lenders seemed to acknowledge the legitimacy of this claim, asserting that the Plan's claims had "no value to [the Plan] except maybe the counterclaim against Saratoga Springs which we don't mind leaving out of the sale and let[ting the Plan] litigate with the city over that one because it's an offset type of claim. As to all of the others, [the Plan does not] care." And in their briefing, the Lenders have identified the court case in which the Plan's counterclaim was pending by case name, court, and case number—descriptive information that would have been readily available at the time the writ was issued. Thus, this claim was susceptible of specific identification in a writ of execution, giving any interested member of the public enough information to consider its potential; and, as the Plan contends, certainly the City of Saratoga Springs itself was a potential bidder at an execution sale of a counterclaim against it. Thus, with respect to this claim, the parties were well aware of detailed information beyond the "[a]ny and all claims" description in the writ that could have more accurately informed the public about the claim being sold and aided any potential buyers in evaluating its worth, thereby better fulfilling the purpose of the public sale process. Given this, as well as the Lenders' own offer to allow

the claim to be separated from the others for purposes of the execution sale, the district court seems to have exceeded its discretion in not taking up the Lenders' offer to sell this claim separately.

¶15 Accordingly, we reverse the district court's decision to allow the writ to go forward with the description of "[a]ny and all claims." We therefore vacate the execution sale and remand to the district court for further proceedings. The issue of whether the claims could be sold as a group or are required to be sold separately is not before us. Accordingly, on remand the district court may exercise its discretion either to separate the claim involving the City of Saratoga Springs from the others or to sell it along with the rest of the claims, provided it is adequately described, and otherwise keeping in mind the purposes of a public execution sale.[4]

¶16 The Plan requests attorney fees incurred on appeal. The Plan points to a clause in the loan guarantee underlying this action that provides Lenders with attorney fees incurred in collection efforts. The Plan therefore argues that if it prevails on appeal then it should be awarded attorney fees under the "reciprocal right to recover attorney fees provision of Utah Code [section] 78B-5-826." While we have determined that the Plan was correct in its assertion that the claim involving the City of Saratoga Springs should have been described in more detail, this does not mean that the Plan has "prevailed" on appeal in the usual sense. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)). The Plan was not awarded attorney fees below. On

---

4. We note that while we found no abuse of discretion in its decisions as to the other claims at issue, because the sale process will have to be repeated, our remand should not be interpreted as restricting the district court from reconsidering more broadly how the execution sale (or sales) ought to proceed.

appeal, the substantial judgment entered in favor of the Lenders and against the Plan has not been reversed, and indeed, remains almost wholly unaffected. While the matter will be remanded so that the property disposed of in the writ can be sold again with a more detailed description, the fact remains that the property will still be sold. Accordingly, we decline to award the attorney fees incurred by the Plan on appeal.

¶17    We reverse and remand to the district court for further proceedings consistent with this opinion.

——————